Good morning, members of the court. My name is Tyler Pitko. I represent the defendants and appellants in this matter. That's Naimat Kadah International, Inc. and Mohamed Ousman, who is the owner of the corporation. I would like to reserve four minutes for rebuttal. The two erroneous orders by the magistrate judge below, purportedly enforcing a confidential settlement agreement between the parties, elevate expedience over fairness and due process. Let me ask you a question before Judge Hurwitz gets one in. On 1A, it says, In the event of a default on payment, Avila shall be entitled to a capitalized stipulated judgment against Naimat and Ousman. What is the stipulated judgment? Because that references usually a separate document, which is an agreement between the parties. What does that reference? Well, there was no stipulated judgment filed below in this case. What happened, Your Honor, is that there were more ---- The parties, when they wrote that and drafted that and put it in the agreement, was it contemplated that there would be a stipulated judgment? Or what was contemplated by that language? Yeah. Well, the default, our understanding of default is we stiff them, we don't pay them. That's not what happened here. A year went by. But assume that happened. Like Judge Ikuda, she beat me to the punch. I can't figure out what this means, so tell me what it means. Yeah. I would like to know what those words refer to and what this language, what the parties intended by this language. So my understanding, and a lot of times we have a settlement agreement and a stipulated judgment. You can go in ex parte if there's a default to get a judgment and then go enforce that judgment. Is that an enforceable contractual provision? Well, pursuant to a settlement agreement which the Court supervises, oftentimes there's an ex parte procedure in the event of a default, and that didn't happen here. So do you think the Court can have an ex parte hearing to determine whether there's a default? No. If the parties agree to it, it's a contract. Settlement agreement is a contract. So you wrote this language in here and the parties agreed to it, but there was no stipulated judgment prepared. Is that correct? Correct, Your Honor. So did the parties intend to have a stipulated judgment prepared as an attachment to this settlement agreement, or what did this language mean, given that there was no stipulated judgment capitalized? Well, my understanding, if there was a default, our clients just refused to pay for no good reason, that the plaintiff could go into ex parte and say there's X amount. Okay. So without a stipulated judgment. So if I just read this as, in the event of a default on payment, a villa shall be entitled to a judgment against NAMAC for the unpaid balance only, and plaintiffs may apply ex parte for entry of the judgment. Is that the understanding? Yes. Okay. And then when I look at paragraph 21, that seems to support what you're saying because it says except the ex parte proceeding to obtain the judgment caused by the company's breach for unpaid balance, everything else is arbitrated. So that language in 21 relates back to the language we were just discussing in 1A? Right. The exception is for a default. Okay. And in the event of a default, except the ex parte proceeding to obtain the judgment caused by the company's breach for unpaid balance. So that refers to the, in the event of default. Right. So what the parties agreed to was to carve out of arbitration payment, failure to pay. Am I understanding this correctly? Correct. Correct, Your Honor. A simple default. And what happens here Why does it say simple default? I mean, that's my question. Why couldn't the court then determine whether or not a default had occurred? Well, because of the arbitration provision, any and all disputes I mean, that's the confusing part to me is that you have, you've left enforcement of the agreement to the court, you say default, you can enter a judgment if there's a default, and now you're quarreling about whether there's a default. And I understand your position on arbitration, but isn't it reasonable for the court to say, look, I get to determine whether there's a default or not, and then I enter a stipulated judgment? Right. If there was a failure of payment, we stiffed them. But you didn't pay. There's no dispute. We did pay. We did pay. You paid the attorney's fees, but you didn't pay the appealers. Right. So there's no dispute that you didn't pay the appealers, is that correct? That's correct. Okay. And then you said you had an excuse for the nonpayment, but the district court didn't think you had carried your burden of showing illegality. Is that right? No, no. That's not our argument at all. You didn't have an excuse? So there was a nonpayment, which is undisputed, to the appealers. Correct. And then you had, but you had an excuse for nonpayment? That's how I understood the argument. No, the argument, Your Honor, the central argument is that this is a settlement agreement. It's a contract like any other contract. There is an implied obligation of good faith and fair dealing. That requires cooperation. That requires good faith. But that's your contractual argument. Let's start with where we all agree. You didn't pay them. They contend that's a default. You contend it's not a default, correct? Right. Why did you have an agreement that says in the event of a default, the district court can enter a judgment for the unpaid amounts? Why doesn't that leave the power to determine whether there's a default with the district judge rather than an arbitrator? Well, I would agree, Your Honor, that the district court presented with that could decide was there a failure, was there a default of payment. Okay. So then, but your brief says it should have been sent to an arbitrator. Are you now abandoning that position? No, no, no. There's more than a failure to pay here. There was payments. We tried to pay them. Well, no, there wasn't payment to the appealers. I understand that you paid the attorney. Right. With respect to the appealers are asserting a default. They're saying we never got the money. You're saying you're right, you didn't get the money, but we're not in default because you had obligations towards us. That's the nature of the dispute. We're not going to resolve that dispute today. The question is who was the appropriate person to decide that? Was it the district judge or the arbitrator? Well, I mean, the district court, when it was presented with these facts, these is not a failure to pay. It's a good-faith attempt for a year to pay. Well, no, that's your merits defense. You may well be right. I'm just trying to figure out who decides. If it's an undisputed default, the district court can enter judgment. Where does it say undisputed, though? You know, you start with the premise, leaving aside the arbitration clause, you start with the premise that when a court approves a settlement agreement that it retains jurisdiction to enforce the agreement and that it has special knowledge of the terms, or at least supposedly. So here, basically, I see what the magistrate judge did was to say, well, they claim default. There's a stipulated procedure for that, and you don't have an excuse, and therefore I'm going to use the stipulated procedure. Well, it reads out of the contract multiple provisions, including the arbitration provision. If they went in and said we haven't been paid anything and there's a default, the district court can enter judgment, where the evidence shows that for a year we've been trying to comply, to pay. We paid the attorney. What happened here is the attorney got his money and then disappeared for 6 months. The settlement was in July of 2012, July 6th. He finally sent his W-9 in December of 2012. We asked for the employee's taxpayer. And, again, I don't think, maybe I'm wrong, maybe my colleagues will correct me, I don't think we're here to decide whether or not you complied with the contract or they didn't comply with the contract. I don't – I think the issue in front of us is, as you phrased it, is whether or not this should have been sent to arbitration. And you may have great arguments. You may be – these may be dead-bang winners, but I'm – that doesn't help me in determining where it should go. Well, that's one of the arguments, is when there's disputed facts, that's why you have arbitration. You go to arbitration. If it's a clear default, the judge enters a stipulated judgment. Or if you're construing a contract, a settlement that the court approved, then you give some deference to how the court construes the terms of the contract. And I – what I take for what the court did here is to say, look, this falls within the stipulated judgment clause. It doesn't constitute an arbitratable dispute under the arbitration clause. And you have a good argument. They have a good argument. But we're looking at the district court enforcing its own order. But the district court is then deciding disputed facts. It's not enforcing a default. But let's assume it can decide disputed facts for a second. Your – now your contention is that it was wrong on this set of facts to enter judgment. Yeah. Whether an arbitrator decided it or whether the district court decided it, it was wrong for multiple reasons. First of all, again, the chronology is important here. July 6, 2012, we settled the case. We bargained for confidentiality. We represent a small Indian restaurant, Kabob and Curry's. It's not Ernst & Young down in Santa Clara. They're worried about employees and former employees coming out of the woodwork. Bargained for confidentiality, bargained for mandatory arbitration of any disputes other than the default in payment. If it's a simple default. But they had that one carve-out that they bargained for from a default in payment, which you acknowledge occurred here, that in fact they weren't paid. I don't see that as a default. Well, they were paid, were they? And then there was a requirement, unconditioned requirement, that they'll pay. Well, see, the settlement agreement references multiple times it's subject to tax withholding. That's what the new Cifuentes v. Costco case says. Whether it's a judgment based on a jury verdict or a settlement, we have to withhold under federal law. So they have to cooperate with us so that we can properly withhold. We get his W-9. Another six months goes by. I'm asking for your client's tax ID numbers. We even told them there's an ITIN process if they're undocumented. That can be done. We are not going to violate federal law by just paying under threat of a motion. Can I ask a different question? And you're entitled just to say no to this. You want to pay. That's what you say. They want to get the money. Isn't there some way to work this out? I know you went through mediation in the district court and it didn't work. But this strikes me as an incredibly, a case that sort of calls out for the parties to sit down and work it out. You put the money, you put up a bond, so you're not looking not to pay. All they want to do is get the money. Right. And the only question is how can that be done compliant with whatever the IRS requires? Right. Can't that be worked out? Well, you know, it can. And you're making, you're going down what the district court did here, which is this is small potatoes. Why are we even here on this appeal? The answer is that there is a way to resolve this. That's why there's an arbitration provision, mandatory arbitration. Once the district court enters an order. We're just talking practicalities here. You go to arbitration, then you're back in six months and the one side is unsatisfied and you're back before the district court arguing about whether it's arbitrary and capricious. I mean, I think the question is we have circuit mediators. Would they be assistance to you in getting a global settlement? Because they can also bring in, they can deal with non-parties, which seems to be part of your concern as well. Well, we tried that. I mean, we tried it with Magistrate Judge Cousins who settled the original case. The problem is once the court then awards attorney's fees on top of that, through no fault of our own, we didn't create this problem of reporting false information to the government. We are trying to pay. Now there's attorney's fees wagging the dog's tail. And that's what we have here. I mean, I'm not going to get into confidential mediation discussions, but there are impediments. I mean, we are here because absolutely, Your Honor, that should have happened. There was even a post-hearing on the attorney's fees where we volunteered to go to mediation. But by then, the agreement's enforced. Not only that, my client has to pay attorney's fees on top of it and through no fault of their own. I mean, this, for the life of me, I don't understand. You settle a case. Just give us your information. We issue the checks. Six months goes by before we get the attorney's W-9. And then, well, he's been paid, so he forgets about his clients for another six months. Then I get an e-mail, and I just want to read it. It's in the excerpt of record of 237. I suggested, because he conceded they were not properly documented, invalid Social Security numbers. He says, first line, unable to obtain the I-10s by W-7. That's the process that has been created by the IRS for undocumented workers to report and pay taxes. And then he says, there is a way in taking withholdings under these circumstances. If you want me to spend an attorney time researching it at your client's costs and tell you my research and my reply brief, I can do that, too. And then he demands a $5,000 payment. The implied covenant of good faith and fair dealing implicit in this agreement is we're going to comply with federal law. We don't want to risk an IRS tax audit. My client is a first-generation immigrant. It knows about the overtime laws now, and now it wants to strictly comply. Instead of threatening with fees, let's work it out. I am confident that if Mr. Margan, who is the appellate counsel, if he had been on the case in the trial court, we would have resolved this in a 15-minute phone call. But my client is penalized by an inexplicable delay in cooperating to have the necessary means to effectuate the party settlement agreement. It's as simple as that. It's a waste of time, money. I'm not going to disagree with that, but we are where we are as a result of the district court's order. And what the district court ignored here is it's not just a simple default. We were attempting multiple emails over a year. We want to pay it. We got the money. We want to pay it. Please help us. And instead we get a threat. You know, six months goes by and I don't hear from him. And then it's, I'm going to file a motion on Monday, and here's, you know, if you pay me $5,000, I'd do some research for you on the tax laws and the tax codes. And then they're now on appeal. They say they've done new research. That doesn't answer the question. My client should not have to risk a tax audit and penalties and interest when they, all they were trying to do is comply with Federal law and the party's agreement. Thank you, counsel. We'll give you some time. Good morning. May it please the Court. Tomas Margain for Misael and Sergio Avila. And I would like to split my time to give Adam Wang five minutes, only if the Court has specific questions as to the companion case on the attorney's fees. Well, generally we don't hear argument from somebody who doesn't file a reply brief. It's up to you if you want to yield him time. I'm not sure if we have any questions for him. Thank you, Judge Tomas. I'll give him the five minutes in case the Court has any specific questions as to him. I'd like to start by trying to answer Judge Ikuda's question about the ex parte. And this is, I thought about it when I was sitting there. Ex parte does not mean uncontested. It just means off the record. You can have a contested ex parte. But it means one party. Ex parte, right? Right, but you have to give them notice, 24-hour notice. Here the Court held a hearing. In reviewing the cases I cited on the abuse of discretion standard to enforce settlement agreements, there was a reversal because the judge did not grant a hearing. But I'm still trying to understand how this mechanically works. This says when there's a default, the judge will enter a stipulated judgment, right? Right. There wasn't a stipulated judgment. There wasn't. And here now we're dealing with waiver issues that weren't brought up. And I'm not ducking the question. No, but I'm just trying to figure out mechanically how it works. And they contest default. Correct. They say we did not default. Okay. So under that circumstance, why doesn't it go to arbitration? Arbitration says everything except this ex parte, everything other than this ex parte entry of judgment goes to arbitration. We didn't have an ex parte entry of judgment. And you agree because there wasn't a stipulated judgment. Why doesn't this issue go to arbitration? Let me answer your question and then back up. To answer your question, this is a def — their issue is a defense to contractual formation. Now, there's a defense to what? Contractual formation or an affirmative defense, the breach of good faith. These are contractual defenses. So to answer your question is a default goes to the district judge, everything else goes to arbitration. Had they been arguing a cross-claim or a counter-claim to the default, that's Well, sure. But surely we're in Federal court. It's not a cross-claim, I don't think. But what they said was we're not in default. We have — we're ready, willing, and able to pay, but we can't do so until you comply with your contractual obligation to give us enough information to be able to deal with the IRS. Their argument may be good, bad, or indifferent. Let's wait for a second to get to that. Why is that — why is the ability to determine that argument encompassed in a procedure that calls for ex parte entry of judgment? Because of the second — I believe it's paragraph 21 where it fleshes it out, where it says, except for the ex parte procedure. And I guess you're right. Right. Except for the ex parte procedure, everything else goes to the arbitrator. So do you agree that there was no document called stipulated judgment that the parties had signed? That's my understanding, that there was not. That's correct. And you weren't proceeding under the ex — I'm sorry, Judge. And so in the — the way to read this is, in the event of a default on payment, Avila shall be entitled to a judgment for the unpaid balance. Plaintiffs may apply ex parte for entry of the judgment. And so the proceedings, that was carved out of arbitration. So what was your understanding of what was carved out of the arbitration? What type of proceeding or what sequence of events? Enforcement of a default on payment. The payment default and any defenses to that. And when you read the contract, the specific carve-out was the enforcement of the payment provisions are reserved to the district court. Everything else goes to the— But the carve-out is the ex parte proceeding. And you — I think we all agree there was no ex parte proceeding here. Correct. It was a— So if that's all that's carved out, aren't all other disputes to be resolved by the arbitrator? The disputes other than the default of payment. Well, but that's — that's what I'm trying to read into this. What this says is, in the event of default of payment, you may apply for an ex parte and entry of judgment. But you didn't do that. It was a noticed motion. Right. And it's not an ex parte entry of judgment. And therefore, if it's not that, aren't all other proceedings in front of the arbitrator? And the interpretation of a contract is due de novo. So I think this panel can look at the contract. I would submit that the specific carve-out was enforcing the payment proceeding provisions. The defenses, the contractual defenses that arise out of that are necessarily subsumed into what was reserved to the district court. The district court granted a hearing, actually asked counsel about whether there was anything in writing to provide the Social Security numbers or not. So — So what's your position on the merits of the dispute? Is your position you're entitled to be paid without providing any identifying information? Except for the backup withholding. So the — and this argument was never — The answer is yes. Yes. And this argument was never waived. It was raised, and the specific 26 U.S.C.A. 3406 and the CFR, which I cited, spell it out. With respect to the Cifuentes v. Costco case, when I did some research, I saw a lot of Federal cases where I would call them the kind of the tax evader cases where different individuals sue, whether the IRS or their employer, for taking backup withholdings. There's two cases. One was — So, again, I want to be clear. Your position is they just — they have to take out the appropriate amounts and send them to the IRS or to the appropriate authorities, but they need not have — you are not required to provide any identifying information? Correct. And I think there's competing public policy interests. Under the FLSA, all workers are allowed to get their wages. The IRS, they want the money in a way that they can distribute and earmark it, including to Social Security. And, obviously, Homeland Security has their own public policy to criminalize employers who hire undocumented workers and to control immigration. So, with respect to the IRS, what an employer has to do is take the maximum backup withholdings, send it to the IRS, and then it's the burden on the employee to get a refund. So, here — And you cite what statute for that proposition? The 26 U.S.C.A. 3406, and it's also 26 CFR Section 306. Those say that it's your obligation to keep at the maximum withholding. Do they also say that you need not seek from the employee identifying information? No. They require you to seek it, and it's — Yeah. And that's what your opponent is saying. I'm required by Federal law to seek it, and you won't give it to me. But an employee or an individual has the right to refuse it. The consequence is you get the maximum amount deducted. And you take that from your reading of the statute as opposed to what it says? Correct. There's nothing in the statute that says you have a right to not give it? No, it's a consequence. You don't have a right to not give it, but there's a consequence in not giving it, which is the maximum amount is withheld, and then you have the — But you're saying that the — as I understood your brief, that the employer can legally pay and — but merely without getting the information by maximum withholding, and I think there's some good cause requirements and the like, which I suppose that the employee won't give it to you would be a good cause. Good. You're correct. And it would be a much different case if the defendants had paid 60 percent of the funds, sent the other 4 to the taxing authorities, in this case it's the IRS, and then said, we complied, and then we had filed a breach of the payment. It would be a much different case, because at that point they complied. This is a nonpayment, not how they segregated the payment. So I understand. I mean, they were in an employee-employer relationship. So the employer was not — didn't — why didn't the employer have their information during the employment relationship? The — they would be required by law to have it. There's nothing in the record as to that, but what is in the record are e-mails, and I believe they were starting in December of 2012. The motion was filed in August of 2013, where the defendant said, we are going to verify Social Security numbers. And I think that's where sort of the boogeyman of — So it appears from the record that they had Social Security numbers given to the employer, and they were asked to verify them, and they couldn't do it. Right. And I'm query as to why they, at that point, they were verifying them. But, again — Well, it turns out on this record that they're not the real Social Security numbers, right? That's correct, and the workers exercised their choice to not provide them, and the medicine they had to take for that would be the 40 percent or the higher withholdings. Let me ask you this about the — you know, we have the arbitration clause. What does it mean? What is it governing? I mean, I see, apart from payment, all I see are promises of confidentiality and nondisparagement. Correct. Is that it? Yes. So your view is that the arbitration clause is confined to breaches of confidentiality and breaches of the nondisparagement clause? And if the IRS assessed a penalty, and Judge Graywalt did note this in his order and at the argument, it also reserved an indemnification from the employer. So if Uncle Sam went after the defendants under the arbitration agreement, they would have a right to sue for remedies including indemnification. Well, so those would be the three things that would go to arbitration? Correct. And those are the things that were most important to defendant. What was more important, most important to plaintiff, as I put in the brief, was to get paid. That's — that was their goal in the litigation. Their goal — the goal for defendants in the litigation was to buy their piece and have a arbitration for any of the ramifications that may have come from the payments. I'm not sure if I articulated that correctly. Unless the panel has any questions, I did want to save some time for Mr. Wang, just if the panel has any questions to him. All right. Thank you, counsel. Does anybody have a question on the fee dispute? Okay. No, we don't have any questions for you. Thank you. Just a couple of points. It occurred to me when I sat down that, you know, even if there was a stipulated judgment, Cifuentes' very recent case, 2015 in June, court of appeal here, said, you still have to withhold. So what if there's a judgment? We're still not going to pay. We need to verify their tax — But you're withholding their wages when they were working for your clients, right? Right. It turns out they gave us fake IDs. And employers are between a rock and a hard place. If it presents — if the employee presents or applicant facially valid documents, we have to accept them. And if you inquire further, you get sued for national origin discrimination, violation of — So why didn't you just pay to the same accounts that you'd been paying to up until now? Well — When you had — you'd been withholding for these guys. Well, the federal law says once you know, you can't — you can't — you can't knowingly employ an undocumented worker. Once we know. We accepted their IDs as valid. We paid them under what we now find out is a fake Social Security number. And, I mean, this is becoming kind of complicated. All we want to do is make the payments and comply with supreme federal law, the tax obligation. This argument about, you know, putting in all zeros and just withholding the maximum, first of all, I mean, if Mr. Morgan and I had cooperated as the agreement required and made this in the — before making a motion, it would have been done. But this is raised for the first time on appeal in the opposition. We've addressed it in our reply. It's not as simple as what's been suggested here. There are reasonable cause standards. There are — the exceptions require due diligence by the employer. You have to make annual solicitations for the information. It's not so simple as just withhold the max. And the point is, under this agreement, implied covenant of good faith and fair dealing goes both ways. You can't just sit back for six months and say, okay, here's my W-9. Okay, I've been paid. You know, wait another six months. Threaten me with a motion, you know, and you've got to pay $5,000 even if you want to settle it, when it's through no fault of ours. We're trying to comply. This implied covenant of good faith and fair dealing requires cooperation and good faith. And that didn't happen here. And that's why — they also misled, in defense of Magistrate Judge Graywall, they — in their reply brief is when they submitted this hearsay declaration, an IRS agent, unidentified, told me just enter all zeros. They misled the court. We didn't have an opportunity to brief that because it was presented for the first time on the reply brief below. And now we have on opposition — we have a new argument in the opposition on appeal. If we had sat down as the agreement required, worked this out, we wouldn't have been here. My client wouldn't be on the hook not only for the settlement amount, which they agreed to, but now also attorney's fees, which Judge Graywall has misled below into ordering. Thank you, counsel. Thank you. The case has now been submitted for decision and will be in recess for the morning.
judges: Thomas, Ikuta, Hurwitz